[No. 10362. Department Two. October 14, 1912.]

*In the Matter of the Estate of* WILLIAM CON BELL.
W. C. BELL, JUNIOR *et al., Appellants,* v. HOTEL SORRENTO *et al., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS—CLAIMS—ALLOWANCE TO WIDOW—PREFERRED CLAIMS. Under Rem. & Bal. Code, §§ 1466, 1467, and 1571, authorizing allowances for the support of the widow which are preferred over all claims except funeral charges and costs of administration, the court may classify and allow, as preferred, claims for caring for the widow at a hotel and hospital, doctor's and nurse's charges, and her brother's expenses in a trip from the east to care for her, where the deceased and widow were fatally injured in an accident while temporarily in the state, in view of the gravity and manifest necessities of the case.

[1]Reported in 127 Pac. 100.

SAME — ALLOWANCE TO WIDOW — PREFERRED CLAIMS — NOTICE—
WAIVER—GENERAL APPEARANCE. There is a general appearance in
probate, which waives jurisdictional objections to an order classi-
fying claims and directing preferred allowances because of want of
notice of final settlement provided by Rem. & Bal. Code, § 1562,
where the parties had actual notice of the hearing, asked and ob-
tained a continuance, and stipulated for a hearing at a later date, at
which they had full opportunity to be heard.

SAME—CLAIMS—JURISDICTION—NOTICE—NECESSITY. The juris-
diction of the court to make allowances for the widow's support
which are preferred to claims of other creditors does not depend
upon the notice to all creditors required on final settlement, as
against creditors who had actual notice; nor as to other persons
having claims, in view of the opportunity of such claimants to be
heard on final settlement.

SAME—CLAIMS—ANCILLARY ADMINISTRATION. Upon an ancillary
administration in this state upon the estate of a resident of Ken-
tucky dying in this state, the court may make allowances for the
support of the widow while being cared for in this state, without
having the claims passed upon by the probate court of Kentucky.

SAME—OBJECTIONS TO CLAIMS—ESTOPPEL — INCONSISTENT POSI-
TION. Creditors filing claims in an ancillary administration in this
state, and asking their allowance by the courts of this state, are
estopped to question the jurisdiction of the court to classify and al-
low the claims filed.

Appeal from orders of the superior court for King county,
Frater, J., entered February 4, and December 9, 1911, classi-
fying and ordering paid certain claims against an estate,
after hearings before the court. Affirmed.

*Byers & Byers*, for appellants.

*Ben L. Moore*, for respondent Rochester.

ELLIS, J.—In this appeal certain creditors of W. C. Bell,
deceased, and the guardian of the estate of his minor son,
seek a review of two orders of the superior court for King
county, the first made on February 4, 1911, and the second
on December 9, 1911, by which certain other claims against
the estate of W. C. Bell, deceased, were classified and ordered

paid as allowances to the widow and as expenses of her last illness, during the process of administration of the estate. The facts are not disputed. The deceased and his wife, Elizabeth Young Bell, were residents of the state of Kentucky. In April, 1910, while they were temporarily in the city of Seattle, W. C. Bell was killed outright in a street car accident, and his wife received injuries from which she died in the fall of 1911, after having been taken back to her home in Kentucky.

It is admitted that, in the fall of 1910, the respondent G. A. C. Rochester was appointed by the superior court of King county administrator of the estate of W. C. Bell. The claims attacked, as improperly classified as allowances to the widow, were all for services rendered to her after her husband's death. They are as follows: After the accident, the widow was cared for at the Hotel Sorrento and Seattle General Hospital, at each of which places she remained for a considerable length of time. The claim of the Hotel Sorrento on this account was allowed for $746.75, and that of the hospital for $270.75. The respondent Arthur Young, a brother of the widow, made two trips from Kentucky to Seattle to care for his sister and her affairs and the affairs of the deceased, and his claim, for railroad fare, loss of time, and hotel bills, was allowed in the sum of $1,177.42. The claims of the respondents Dr. Davidson and Dr. Shannon were for professional services rendered to the widow during her last illness, and were allowed in the sums of $400 and $1,746.50 respectively. The claim of Louisa Laemrich was for services as a nurse, amounting to $16, and that of Frederick & Nelson for necessaries furnished in the sum of $11.69. The administrator testified that all of these claims were for necessaries and for necessary services and attention rendered and furnished during and on account of the last illness of the widow. No evidence was offered to the contrary.

The statute, Rem. & Bal. Code, § 1466, provides that, if

the property of the estate, exempt by law from execution, be
not sufficient for the support of the widow and minor child
or children, the court shall make such reasonable allowance
out of the estate as may be necessary for the maintenance of
the family according to their circumstances, during progress
of settlement of the estate. By § 1467 this allowance is given
preference over all other charges, except funeral charges and
expenses of administration. Section 1571 makes it the duty
of the administrator, as soon as he have in hand sufficient
funds, to pay the funeral charges, expenses of last illness,
and the allowances made to the family. Under these sections,
as construed by this court in *In re Murphy's Estate*, 30
Wash. 9, 70 Pac. 109, we think the court was justified in
classifying and ordering these claims paid as allowances to
the widow. In that case it was held that money expended by
the surviving spouse, for household and family expenses and
for physicians' charges on account of the last illness and
death of minor children, was properly allowed as a part of
the family allowance. The statute makes no distinction as to
the character of such allowance as between the widow and the
minor children. The humane considerations, which are the
evident basis of the statute, are as potent in the one case as
in the other. Though the claims were large in amount, there
is no evidence that they were exorbitant. The gravity of the
widow's injuries, the long duration of her illness, her great
distance from home, and the manifest necessities of her case,
are sufficient to account for a large and necessary expense.

The appellants contend that the court was without juris-
diction to enter the orders, except upon the same notice as
that provided in Rem. & Bal. Code, § 1562, for final settle-
ment of administrator's accounts. The admitted facts show
that, upon the presentation of these claims, the administrator
petitioned the court for an order as to their classification and
allowance. On the hearing of this petition, the appellants
W. P. Harvey, as guardian, the First National Bank of Har-

rodsburg, and Lee Smock were represented by counsel. The claims of the other appellants had not then been filed, and these other appellants made no appearance. The first order, allowing the claims of the respondents as allowances to the widow, was entered on February 4, 1911. Afterwards, when the claims of the other appellants were presented and it became apparent that the estate would not be sufficient to pay all claims in full, the administrator again petitioned the court for an order classifying the claims and directing the payment of those of the other respondents in preference to those of the other creditors. This petition was served upon Ovid A. Byers, as guardian *ad litem* for W. C. Bell, Jr., minor heir of the deceased, and as attorney for W. P. Harvey, guardian of the estate of W. C. Bell, Jr., and as attorney for all of the other appellants, with oral notice of the time and place of hearing. On November 16, 1911, the time set for hearing, all of the appellants appeared by the attorney, Ovid A. Byers, and objected to the jurisdiction of the court for lack of sufficient notice. Without waiving this objection, their attorney requested a continuance of the hearing until he could communicate with his clients who resided in Kentucky. The continuance was accordingly granted till November 30, 1911. Thereafter it was stipulated between Ovid A. Byers, as guardian *ad litem* for the minor and as attorney for all of the other appellants, and Ben L. Moore, as attorney for the administrator, that the matter should be heard on December 9, 1911, at which time Ovid A. Byers, as guardian *ad litem* for the minor and as attorney for the other appellants, appeared and again objected to the jurisdiction. The court overruled the objection and after a full hearing of the evidence as to the claims and the circumstances under which the services were rendered to the widow, made the second order.

It is admitted that all of the appellants had actual notice of the time and place of hearing on the second petition. This accorded every advantage which notice in any form could have

given.  The only purpose of notice in any case is to give an opportunity to be heard.  They not only had notice, but appeared and asked for a continuance and afterwards stipulated for the hearing.  We think that action must be held to constitute a general appearance to the petition, and that they were before the court for all purposes.  Probate matters in this state are referred to the superior court, a court of general jurisdiction, and its jurisdiction in probate may be submitted to in the same manner and is entitled to the same presumptions in its favor as its jurisdiction in any other class of cases.  As to the parties before the court, it has the same broad powers to determine the matters at issue, and its determination is entitled to the same weight as in other civil cases.  *Filley v. Murphy*, 30 Wash. 1, 70 Pac. 107 ; *Sloan v. West*, 63 Wash. 623, 116 Pac. 272 ; *Alaska Banking & Safe Deposit Co. v. Noyes*, 64 Wash. 672, 117 Pac. 492.

But it is argued that all creditors of the estate were interested, and that the court could not acquire jurisdiction to establish any claim as a preferred claim without the same notice to all claimants as required on final settlement.  It is true that the supreme court of California has so held.  *In re Smith's Estate*, 122 Cal. 462, 55 Pac. 249.  We cannot follow that decision.  It may be conceded that the order will bind no one not having notice or appearing at the hearing. But there is no more reason why persons who had  actual notice and actually appeared should not be bound than would exist in any other case where the subject-matter is within the jurisdiction of a court of general jurisdiction.   Other persons having claims, if there are any, are amply protected by the opportunity to be heard on the final settlement and by the bond of the administrator.

Nor do we find any merit in the contention that these claims should be submitted to the probate court of the state of Kentucky.   There is no claim that this is not a proper case for ancillary administration within the state of Washington, and

there is nothing in the statutes of this state limiting the powers of the court in such a case. *Alaska Banking & Safe Deposit Company v. Noyes, supra.* Moreover, the appellants are estopped to object upon this ground, since they have filed their own claims in this state and asked their allowance by the administrator here.

The order appealed from is affirmed.

MOUNT, C. J., MORRIS, and FULLERTON, JJ., concur.